ERNESTO FRANQUIS PIÑERO ET AL., Plaintiffs and Appellants-Appellees, *v.* JESÚS GONZÁLEZ GARCÍA, Defendant and Appellee-Appellant.

Nos. 8081 and 8086. Argued May 7, 1940.—Decided July 26, 1940.

*Francisco González Fagundo* for appellants-appellees. *José C. Rivera* for appellee-appellant.

MR. JUSTICE TRAVIESO delivered the opinion of the court.

In the complaint filed in this case it is alleged:

1. That by a deed No. 146 of November 17, 1930, executed before Notary Fulgencio Piñero Rodríguez, Jesús González García and his wife Cristina Martínez acknowledged having received from Francisco Franquis, as a loan, the sum of five hundred dollars which they agreed to repay on June 30, 1931, with interest thereon at 12 per cent per annum.

2. That the 30th day of June, 1931, having arrived, the defendant has failed to pay either the principal sum of five hundred dollars or the interest thereon amounting to thirty-seven dollars and fifty cents.

3. That in the deed referred to in the first paragraph of this pleading it was agreed that, in case of judicial claim, the debtors bound themselves to pay $200 for costs and attorney's fees.

4. That Francisco Franquis died in the year 1936, and in the partition of his estate there was allotted to the plaintiffs the mortgage credit referred to in the foregoing allegations.

Wherefore, they pray that the court render judgment against the defendants, adjudging them to pay $500 as principal, $37.50 as interest, and $200 fixed for costs and attorney's fees.

The defendant demurred to the complaint on the sole ground that it did not state facts sufficient to constitute a cause of action. The court overruled the demurrer and the defendant answered, alleging as new matter that the defendant had a crop loan contract with the predecessor in interest of the plaintiffs and that in virtue thereof the defendant had accordingly delivered to said predecessor in interest several quintals of leaf tobacco in a sufficient quantity to cover the principal amount of the loan, totalling $500; that he only owed the sum of $36.50; and he prayed that the court should dismiss the complaint, except as to the $36.50 which the

defendant still owed to the plaintiffs. The defendant prayed for other relief which it is unnecessary to discuss.

The case went on to trial and the lower court filed an opinion in which it analyzed and weighed the evidence, and finally rendered a judgment to the effect that the defendant did not owe to the plaintiffs any part of the $500, but that he did owe to them the sum of $36.50 besides $200 for costs and attorney's fees.

Both parties appealed. We shall discuss first the appeal of the plaintiffs. The errors assigned are all directed to the inadmissibility of the evidence, which related to statements made by plaintiffs' predecessor in interest, a deceased person.

The facts of the case are set forth in the opinion rendered by the lower court, thus:

"The main question to be decided, in the judgment of the court, as appears from the evidence of both the plaintiffs and the defendant, is whether a contract for advances for the raising of a tobacco crop for the year 1930–1931 was entered into between the defendant and Francisco Franquis, and whether the mortgage loan to which the complaint refers was made solely and exclusively as collateral security for the contract for advances. There is no doubt as to the execution of said contract, as appears from the certificate issued by the Registrar of Property of Caguas. This contract was made on November 17, 1930.

"On the same day, there appears to have been executed, before Notary Fulgencio Piñero Rodríguez, deed No. 146, wherein Jesús González García and his wife Cristina Martínez acknowledged having received, as a loan from Francisco Franquis, the sum of $500. This identity of dates of execution, of the contract for advances as well as of the loan agreement, leads this court to the conclusion that in this case the mortgage credit was constituted solely and exclusively as collateral security for the contract for advances. It is certain that, after the crop loan contract had been executed, Jesús González, that is, the defendant, proceeded to plant and cultivate the six acres (*cuerdas*) of tobacco involved in said contract. The normal yield per acre of tobacco in the zones of Juncos, Caguas, Gurabo, or San Lorenzo is from 5 to 6 quintals, and undoubtedly the 28.25 quintals to which the defendant refers were delivered by

the latter to Francisco Franquis. Blas Mangual, a witness for the defendant and a former employee of Francisco Franquis, testified in the sense that he transported the tobacco from the house of Jesús González to the warehouse of Franquis in Juncos. Undoubtedly also, when the month of June arrived, a liquidation of the contract for advances was made. As a general rule, these contracts are secured by mortgage, apart from the principal obligation. There is nothing in the evidence to show that the claim relied on originated in a different transaction from that alleged by the defendant. The plaintiffs could have offered some evidence to this court for the purpose of proving that the liquidation was not made in the manner and form as alleged by the defendant. Nor is there anything to show that Jesús González had continued to plant tobacco for Francisco Franquis; which showing would have led the court to the conclusion that, after the liquidation of the 1930–1931 crop, the parties had somehow contracted for an extension of the mortgage credit. If the date of this mortgage credit were subsequent to that of the delivery of the tobacco or to that of the execution of the contract for advances, the court would certainly be in a position to consider such fact for the purpose of determining whether said contract was an independent obligation and not a collateral one. All the circumstances impel the judge to decide that such is not the case. Taking all those circumstances into consideration, the court is of the opinion that the defendant does not owe to the plaintiffs the sum of $500 but only the sum of $36.50, with interest thereon at 12 per cent from the month of March, 1931, until fully paid, plus $200 for costs and attorney's fees.''

The plaintiffs, however, complain in the following assignments of error of the admission of the evidence:

''1. The court erred in permitting the witness Jesús González García to testify as to the business which he had with Francisco Franquis.

''2. The court erred in refusing to strike out the testimony of the witness Marcos Torres.

''3. The court erred in permitting the witness Blas Mangual to testify regarding statements made by the decedent Mr. Franquis.

''4. The court erred in weighing the evidence, it having failed to apply section 1201 of the Civil Code, 1930 ed.''

■ The appellants largely rely on the case of *Wilcox* v. *Axtmayer et al.*, 23 P.R.R. 319. Said case was distinguished

in that of *Freyre* v. *Sevillano,* 28 P.R.R. 367, and perhaps in others. But the best way to meet the objections made is to transcribe the evidence introduced by the defendant, just as it appears in the bill of exceptions and statement of the case.

"There was offered in evidence a certificate issued by the Registrar of Property of Caguas, attesting to the fact that on November 17, 1930, a deed of advances for the planting of tobacco for the 1930–1931 crop was executed by Jesús González García in favor of Francisco Franquis.

"The plaintiffs objected to the admission of the document on the ground that it was irrelevant and immaterial, and the court admitted it, whereupon the plaintiffs took an exception.

"Jesús González García was called as a witness and, answering questions put by his attorney, he stated that his name was as above shown, that he knew Francisco Franquis, and that in November 1930, he had a business deal with him for planting six acres of tobacco.

"Then the attorney for plaintiffs objected to the witness continuing to testify as to the business he had with Francisco Franquis, since this is a suit by the heirs of said person and, according to the holding in the case of *Wilcox* v. *Axtmayer,* his lips are sealed against testifying as to that particular.

"The court permitted him to testify as to what he had done.

"He continued to testify that in 1930 he planted six acres with tobacco, in two properties of three acres each; that he and Francisco Franquis entered into the contract for advances and that in addition he mortgaged to the latter the two properties of six acres; that it was a single transaction; that he planted the tobacco, harvested it, and delivered it to Blas Mangual, who was the one who transported the tobacco to Francisco Franquis of whom he was an employee. That Blas Mangual carried the tobacco to the warehouse of Francisco Franquis and delivered it; that he delivered twenty-eight quintals and twenty-five pounds; that he liquidated the tobacco at eighteen dollars; that the delivery was made in the month of March, 1931.

"On cross-examination by the plaintiffs, he stated that he called on Franquis and liquidated the tobacco at $18 leaving the same with him; that no document or receipt was handed to the witness; that

the person receiving the tobacco gave a note, and that he had lost said note on the occasion of the San Felipe Hurricane.

"Upon being asked whether Francisco Franqui had delivered the note to him, he answered that he had sent for it one day and it had not been delivered to him. That he called at the office of the attorney, who asked him whether he would take two hundred and fifty dollars for the account, and that he went away without giving him any answer. That he did not remember whether he went to the office of the attorney after the suit had been commenced, and when questioned again he stated that he was there once. That the witness said nothing to the lawyer.

"Answering questions asked by the judge, he stated that he had executed a contract for advances with Francisco Franquis; that he took the money weekly in order to pay the laborers on Saturday; that he received twenty, twenty-five, thirty, or forty dollars more or less; that Franquis did not give him anything for family expenses; that he did not remember how many weeks the refection lasted but that the planting and harvesting of the tobacco lasted from October until March. That he received $500. That after the liquidation was made he still owed thirty-six dollars plus interest.

"That the tobacco yielded $508.50, and the interest amounted to $36 and some cents.

"The witness Marcos Torres was called and after having been sworn he was examined by the attorney for the defendant, and he testified that his name was Marcos Torres; that he knew Francisco Franquis and Jesús González García; that in the year 1930, he was an employee in the establishment of Franquis, and that what he knew about the matter was that one day as he was passing by the house of Jesús González García, the latter asked him 'whether I could give him a crop loan' and I told him that I had no money and that I would go and see whether Francisco Franquis would finance him—and then 'I told him' and he stated that he would make the loan, provided Jesús González García gave him a mortgage on the six acres of land; that he also stated that in addition to the security represented by the tobacco he must have a mortgage on the six acres of land. That the witness told this to Francisco Franquis and he went there in the afternoon.

"That he did not know before what notary the contracts had been executed; that he came to him afterwards and told him that he had made a business deal with Jesús González.

"The striking out of this testimony was asked as it involved statements of a deceased person. The court overruled the objection and an exception was taken.

"The witness Blas Mangual was called and after being sworn testified that he knew Francisco Franquis, who was a tobacco dealer: first a dealer in groceries and then in tobacco. That he lived in Juncos; that he personally knew Jesús González García; that in November 1930, he worked at a business; that he lived in the town and had a small truck for delivering groceries, materials, tobacco, and such things; that he transported tobacco for various persons but had charge of the deliveries to Francisco Franquis, from the crop loan debtors and purchasers that he had there. That he transported the tobacco of Jesús González García from the ward of Rincón to the warehouse of Francisco Franquis, and that the latter had authorized him to pick up the same; that the tobacco was packed in twenty-two bales and that it weighed twenty-eight quintals and twenty-five pounds (*arroba*), and that Francisco Franquis was present when it was delivered.

"Then the attorney for the defendant asked the following question:

" 'Did Mr. Franquis make any statement?'

"The attorney for the plaintiffs objected, and the court permitted the question, the plaintiffs taking an exception.

"On that day they gave him a receipt for the tobacco; that the receipt was given to him by Pedro Calderón, an employee of Francisco Franquis; that Francisco Franquis told him that if Jesús González García had sent all of the tobacco, if he had none left to be settled for, he should call for a settlement, that he would pay for it at the rate of $18, and that this would serve to settle the account and that if any balance was left owing by him it would be very small. That he told this to Jesús González García and the latter stated that he should leave it there, as it belonged to him; that the tobacco was delivered in the month of March.

"When asked by the attorney for plaintiffs as to what he had done with the receipts, he answered that they were not receipts but shipping notes (*notas de conduce*) handed to him, and a bill was given to him for the collection of the transportation charges.

"That he delivered the tobacco in a small truck, at the end of March, and when questioned as to whether he knew if the same had been liquidated at any particular price, he answered that a price of $18 had been offered; that he was not an employee of Francisco

Franquis nor of Jesús González García; that he transported the tobacco of Francisco Franquis; that he went immediately to the country in order to inform Jesús González García, as he passed through there daily, and he asked him whether he had no more tobacco and told him that if he wished he could go and make a liquidation; and that he did not know whether they had closed the deal, because he told him that he had postponed the matter to some other day.

''Answering questions asked by the defendant, he stated that he had informed Jesús González García, and that the person who paid for the transportation of the tobacco was Francisco Franquis, and that he did-not know what was the selling price of it.''

The appellee suggests that the doctrine of the *Wilcox* case, according to which the statements of a deceased person can not be admitted, is applicable only to those cases where there is no documentary evidence to establish the relation with the decedent. It is apparent that there was sufficient unobjected evidence, and that some of it was subsequently sought to be excluded by a motion to strike out.

Independently of the objected evidence, the court had before it enough evidence to conclude that the defendant had really entered into a contract for advances with the decedent. This contract is one of the main questions in this case. It is difficult to imagine that the debtor would execute two contracts on the same day, unless one was related to the other. As decided by the court, the mortgage contract was a collateral agreement.

Consequently, we think that the admission of the evidence, even if erroneous, caused no prejudice to the plaintiffs.

The appeal taken by the plaintiffs must be dismissed.

Let us consider now the appeal No. 8086, taken by the defendant from the decision whereby he was adjudged to pay to the plaintiffs the sum of $36.50, with interest thereon at 12 per cent per annum from March, 1931, until fully paid, plus $200 for the payment of costs and attorney's fees.

The defendant-appellant admits that he owes to the plaintiffs $36.50, as the balance which remained in favor of the

predecessor in interest of the plaintiffs after the liquidation of the contract for advances between him and Mr. Franquis had been made; but he assigns as error the pronouncement of the lower court whereby he was adjudged to pay attorney's fees notwithstanding the holding of the court that he did not owe to the plaintiffs the principal sum which the latter wrongfully sought to recover.

The defendant-appellant is right. If the plaintiffs had claimed from the defendant the sum really owed under the contract for advances, to wit, $36.50, the defendant would probably have paid the same without the necessity of any suit. The plaintiffs sought to recover what was not owed to them, inasmuch as the principal sum had already been paid to the decedent, and thereby compelled the defendant to defend himself and to incur the expenses and costs of a suit.

In his answer to the complaint, the defendant-appellant concluded by saying:

"The defendant prays that this Hon. Court render judgment dismissing the complaint in all its parts, *except as to the payment of the sum of $36.50 for which the defendant remained indebted to Mr. Franquis in March, 1931,* when the crop loan contract was liquidated; ...."

The defendant-appellant having offered and consented to a judgment against him for the sum of $36.50, and the plaintiffs having failed to obtain a more favorable judgment, that is, for a greater sum than the one offered in settlement by the defendant, the latter can not be mulcted in costs. See section 313 of the Code of Civil Procedure. The trial court, therefore, erred in adjudging him to pay the costs and attorney's fees.

For the reasons stated the judgment appealed from must be modified in the sense of setting aside the pronouncement as to the payment by the defendant to the plaintiffs of the sum of $200 for costs and attorney's fees, and, as so modified, the judgment is affirmed.

500

Mr. Justice Wolf concurs in the dismissal of the appeal, in case No. 8081, for failure to file the proper transcript. In case No. 8086, he is of the opinion that, on the same ground, the appeal taken by the defendant should be dismissed and the judgment affirmed.

Mr. Justice De Jesús took no part in the decision of this case.